15.1.4.2 Gerald Carty v. Birberick 15.5.3.4.4. I think the most fundamental thing to keep in mind in this case from the perspective of the federal claims, which is where I'd like to start, is that Judge Tarnow's ruling leaves only one federal claim against Officer Birberick, and that's the substantive due process claim, which as the court knows is a different threshold than, say, a Fourth Amendment reasonableness claim. This is a fairly high threshold to reach. I think this court, in a case that I cited in my brief, Mitchell v. McNeil, gives the most succinct statement of substantive due process when it says to state a cognizable due process claim, the plaintiff must allege conduct intended to injure in some way unjustified by any governmental interest, and that is conscience-shocking in nature. Isn't that really a factual question in this instance, where you have the ramming of the police vehicle into the plaintiff twice? Whether that's intentional, the motivation, I mean, those are just traditional fact issues, aren't they? Are they not? Well, but in this case, we have to look— How can we rule as a matter of law that it's not? We have to look at whether or not—you know, again, this isn't an assault and battery or reasonable in this case. We have to look— It is. Isn't it under state law? I mean, there are state law claims of— Well, there were, but of course, the state law claim, as we explained, is barred by governmental immunity. No, but it's still—that was denied, too, by Judge Tarnow, was it not? No. Assault and battery and the intentional infliction of emotional distress go forward, as does the gross negligence claim. Those three state claims, he said, could go forward. Now, our argument— Right. So they're still in the case. Right. Our argument is that on the state, to jump to that point, gross negligence can't exist because what's alleged is an intentional act. Under Michigan law, you cannot color as gross negligence an intentional act, whereas as far as the intentional acts, which would be the assault and battery and the intentional infliction of emotional distress, those are barred by the Odom v. Wayne County framework. I know in the brief, I cite the Lattice v. Phillips case to explain that. Lattice is interesting because I actually argued that when the attorney who had done the briefs went on maternity leave, and no sooner had I introduced myself and the presiding judge said, well, it's subjective from the perspective of the officer, isn't it, counsel? I said, yes. He said, well, you don't need to say any more. That's really the way the governmental immunity, Michigan on the tort claims, goes. And I think that's addressed pretty well in the brief. You look at the Odom case, you look at the Lattice case, and there's just no way that in the facts of this case, you could get past Michigan governmental immunity, which is very strong. Let's talk about the question he raised in terms of— Right. Why is it not a question of fact as to what his intent was under all the facts and circumstances? Your brief kind of bangs the drum, well, there's no evidence. Well, you know— There's no affidavit by your client. There's no deposition. There's no testimony that it was not intentional. The reasonable inferences here are drawn in favor of the non-moving party, which is the plaintiff. And a reasonable inference is that this wasn't intentional, and you have not rebutted it by any documentarian. Well, as far as there's no deposition, plaintiff scheduled that it was not taken, but— You could take your own client's deposition, but you certainly can submit an affidavit that I had no intent to injure here, but you haven't done it, and therefore reasonable inferences go the other way. That's true. And to say there's absolutely no factual question, when you've submitted no evidence of your client's intent, I mean— But what we have here is in trying to meet that threshold of substantive due process opposed to a reasonableness under the Fourth Amendment, we've got the situation where certainly it was intentional that he was ramming, to use the plaintiff's word, the back of the car. But what we've got here is the Opperman case, South Dakota v. Opperman, which points out that for police to move a vehicle from the road is a proper police function. You don't normally do it by ramming— A car that's in park. Right. In traffic. I mean, you normally call a tow truck or something. You don't ram it with a police vehicle twice with such a velocity that it goes into the gas station. But we have to— With the plaintiff and her kids in the car. Well, you certainly wanted it to move far enough to get out of the road, so some force was required. I agree— So wouldn't you want to at least give the driver and the occupant of the car the opportunity to put it in neutral? Do you want a warner that you're going to do this? To accept the plaintiff's version of the facts, there was no warner. You have to do. I'll have to go with that. But again, the question is, does this rise to the level of conscience shocking as opposed to, say, negligence or could he have been more considerate? Certainly. Could he— Why is— Why isn't that a jury question? Because the question, if it could be or could not be negligence, doesn't rise to the level. In both Lewis, in its very opening paragraph, County of Sacramento v. Lewis, and repeated again in the Plumhoff's case, mere negligence is categorically below the level in order to reach a substantive due process threshold. So who determines whether it's mere negligence? It's probably a jury question, isn't it? I mean, can we say that as a matter of law, that this is mere negligence? Well, the Supreme Court certainly did in both Plumhoff and in County of Sacramento v. Lewis. This court did it in the Mitchell v. McNeil case. No reasonable trier of fact could rule the other way, I suppose. I mean— Here, under these circumstances, and considering the reasonable inferences in favor of the  But all we have is an officer who made a choice, obviously an intentional choice, to ram, to use the plaintiff's words, this car out of the traffic on the street where it was disabled. Let me ask you—and I'm sorry to hit the pause button and back up—is the intent to injure—does property—intent to cause property damage, does that—is that sufficient for the injury, or does it have to be personal injury? Remember, bearing in mind that the plaintiff bears the burden of proof, I don't think there's enough proof to say that there was intent on the part of the officer either to damage the car or to injure the occupants. But that's not my question. My question is, let's assume it was an empty car, and the driver was standing next to it, so that there was the opportunity to say, put it—or is it in neutral? Take that issue out. Just the officer does what he did under circumstances the jury arguably could find he intended to damage the car, the transmission, which, you know, if you try to move a car that's in park, the potential for damage—so my question is, is that the, quote, injury, is it personal injury? Well, certainly what they're alleging in this case is personal injury. There's no claim for the car, and I would say that that wouldn't rise to the threshold of the substantive due process claim. Again, it's a question of—we may agree here that he was inconsiderate. We may agree that in many quarters you could say this was negligence on his part in choosing to do what he did to move this car. We might even say that it was stupid to do it this way in these circumstances, but what the plaintiff's burden is is to show that this was actually beyond negligence and was a conscience-shocking activity where what he did was outside the scope of what was the legitimate interest in getting the car off the road and that he intended to injure them rather than just get the car off the road. We just don't have proof of that. Where would that go to the jury? That would be an issue of law as to whether or not there was a factual support for a finding where a reasonable jury could look at these facts and say, well, he wanted to injure them not just to get the car out of the road. Three kids and I gather a somewhat elderly woman, you've got three witnesses who say the car lifted or once it actually went in the air, so you've got a certain amount of force being applied. Not once, but twice. Right. Under circumstances in which, I mean, again, well, we keep going around the same way. But even, you'll recall that there is even testimony from the plaintiff that between hits the officer came up and said, what are you doing? I could have hurt you. I didn't, you know, obviously to me that suggests he didn't intend to. I'll do it again. You know, it's repeated. Right. Is there anything in the police manuals that say this is an appropriate way to get a disabled vehicle off of road is to ram it? I mean, is that? Well, I know they bump them, but there was no police manual material put in the record in this case. And this is something he came up with on his own, that this ought to be accepted police procedure. And, again, that reaches the other question, and I addressed this in the brief. There's really no case law in this circuit that would suggest that, we may say it's stupid sitting here in hindsight 2020, but there's no case law that would have said that ramming a car out of the road was specifically wrong. And what we really have is- My understanding is you don't need that. You don't get so fact specific that the only way a plaintiff can avoid qualified immunity is to find a case where it's been denied under those facts. Right. But the Supreme Court has also repeatedly cautioned that you can't be so general in your description of what the law is that qualified immunity is negated. I see my time has run. If there are no further questions at this time, I'll let you move. Did you reserve rebuttal? I did. Five minutes. Five minutes? Okay. There you go. You'll have your rebuttal. Thank you. Thank you. Good morning. Good morning. May it please this honorable court, Diana McClain on behalf of the appellees or the plaintiff in this matter. I know that the court has read the briefs, and specifically I rely on the briefs. I would like to highlight basically based upon a case cited by the defendants, Plumhoff, in which it says that a plaintiff can recover under a substance due process theory only if the officer had a purpose to cause harm. That is a question of fact. And in this situation, the plaintiff was deposed. And in the plaintiff's deposition, the court may recall that there was a part one to this incident and a part two. Part one was where the officer gave the plaintiff a ticket. And in giving that ticket, there was a conversation back and forth where my client was dissatisfied and felt that she was pulled over for racial reasons. And she also indicated that she was going to make a complaint to the police department, tell his superiors, and go to the mayor. And based upon that, we're saying that that's part of the inference should be given because that's part of the reason why the police officer wanted to cause harm. He walked away from that, right? I mean, and it seems to me, I don't know, but I'm simply assuming she throws a ticket on the ground. If he's really that maliciously inclined, he says, okay, lady, here's another one for littering. I assume there's a littering ordinance and they're throwing paper on the ground. He didn't. He walks away. Okay? And so I understand what you're saying. I partly agree with you, but I also think it should be qualified. At that moment, the fuse may have been lit by her reaction, but it didn't go, it burned itself out. Okay? My analogy. But go ahead. It's interesting. That's a fair point. It's part of the overall background of the interrelationship between two people, neither of whom function, in my view, as an adult ought to. Okay? This is common in the case. It's lack of common sense that results in investiture, a lot of time, money, and effort in tough cases. But go ahead. I agree. And I can see how the court may have that impression. However, when the officer circled back around the second time, he yelled at her again. Never gave her notice that he was going to ram the car. Never told her to put the car in neutral. Just proceeded to... Or told her to get the kids out of the car. Never did any of that. Never had its bubble on during this time. Never called a tow truck. Never did anything that would be consistent with trying to... What's the problem? I noticed you were here a while ago, and what can I do to help? We get that. A lot of that tends in the whole area of negligence and simple stupidity and indifference. All he did was he rammed the car twice, twice. And based upon that, we believe the plaintiff should get the inference, and that it is a question of fact. They should go to the jury, and the jury should decide whether or not it was negligence or something, gross negligence. Well, I think the judge may decide, it seems to me, because if we don't have evidence, an affidavit, deposition from the officer, that may well create an issue, may result in some judgment motion. So you may not be to the jury yet, okay? Unless the court has any other questions, I don't have anything else to add. I have none. I have none. Thank you. Rebuttal? I would just make the reminder very quickly that the purpose of immunity presumes that perhaps the person seeking immunity didn't act in the best light. As Judge Carr said, perhaps lack of common sense on two sides, perhaps negligence. But, again, those won't reach the threshold that has to be reached for substantive due process. And if we say, as the courts obviously have not, because they've made the decisions as a matter of law, if we were to say, well, it's always the jury to decide whether it was negligence or something more, then the immunity really becomes meaningless in the substantive due process context. And the Supreme Court is adamant that substantive due process is not to be lowered to that level where it becomes a catch-all, a de facto tort excuse for anything else. Well, you know, again, it seems to me that, and I think, I know I'm troubled by this, and I think my colleague, the circuit judges are too, and that is that, let's make it a little different, that he in fact said, please put it in neutral. And he wound up, he struck her with the kind of force that he did, and the first time it shoved it in one way, and he shoves it in the second way. But he's sort of taken a step that is protective. He was just, he hit the gas too hard, or whatever, okay? And that would be a much easier case. Then I do think that no rational jury could find that what he did was intended to harm because he'd taken the precautions that one would expect of a reasonable officer with like the foreseeable risk of harm. And I think, at least for me, quite candidly, the problem is there was a risk of harm. I think it was foreseeable. He acted in the way that he did despite the manifest potential risk for harm and injury. And again, I tilt in favor of let's have the jury find that out. Go ahead. Tell me what's wrong. What Your Honor just described was the elements of negligence, the foreseeable risk of harm, and then acting in a way that brings it about. Again, that's lowering the substantive process. What I'm saying is it goes beyond this, that he just was clumsy in my description. My concern is he does it twice. The kid's in the car. It seems to me there is a risk. Given what the witnesses say, and I think it's up to the jury to determine how plausible some of that testimony is. The witnesses, all three, said, well, we didn't know what he said. And the plaintiff's account is he came and said, you guys, I could have hurt you. So obviously there was a concern in between those hits that the only inference is he didn't intend to. Please don't make me hurt you. Now, obviously there's a miscommunication, but there's no case in this circuit. He could have hurt her the first time, but he could have hurt her the second time. That actually shows that he knows the actions could result in harm, and he does it again. I mean, that actually shows knowledge ahead of time. Is it not the case that the evidence that might have been available to either help or hurt either side here was intentionally destroyed, that the dash cam video is gone? To my knowledge, there's been no argument, discussion, or evidentiary information on that. I don't know any of the facts behind that. I thought that was in one of the depositions that they attempted to get it, and the police said it had been destroyed. Perhaps I'm mistaken. Yeah, but the circumstances of that, I mean, that was what was said, but there was no really follow-up to verify that, and the circumstances of such destruction, assuming it happened, are unknown. Anything further? I have nothing further if the Court has no further questions. Any further questions? All right. Thank you, counsel. A case will be submitted. We may call the last case. Thank you.